UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                MEMORANDUM & ORDER

   v.                03-CR-1382 (NGG)

BALDASSARE AMATO, et al.,

     Defendants.
-----------------------------------------------------X

GARAUFIS, United States District Judge.

   On June 24, 2006, the Government moved to prevent the defense from calling witnesses to elicit prior inconsistent statements made by Government witnesses pursuant to Fed. R. Evid. 613(b). (Gov't Ltr. Br., dated June 24, 2006 ("Gov't Ltr. Br.").) Defendant Baldassare Amato ("Amato") intends to call Richard Cantarella, Frank Coppa, and James Tartaglione to impeach the testimony of cooperating witness Salvatore Vitale ("Vitale") (Amato Ltr., dated June 25, 2006 ("Amato Ltr."), at 2),[1] and defendant Anthony Basile ("Basile") seeks to call Federal Bureau of Investigation ("FBI") agents Greg Massa and Joseph Bonavolonta to impeach the testimony of cooperating witness Joseph D'Amico ("D'Amico"). (Basile Ltr., dated June 25, 2006 ("Basile Ltr."), at 4.) The Government objects to the production of these witnesses on the ground that the defendants intend to call them solely to elicit inadmissible hearsay, because the alleged statements are not inconsistent with D'Amico's and Vitale's trial testimony, Amato and Basile failed to afford D'Amico and Vitale with the opportunity to deny or explain the inconsistent statements, and Amato and Basile gave no notice of their intention to introduce

---

[1] Amato also intends to call Duane Leisenheimer, but not for the purposes of eliciting a prior inconsistent statement. (Amato Ltr., dated June 25, 2006, at 2 & n.1.)

1

extrinsic evidence during the testimony of Vitale and D'Amico. (Gov't Ltr. Br., at 3-4.) For the reasons set forth below, the Government's motion is GRANTED with respect to Amato and DENIED with respect to Basile.

I.      **FACTUAL BACKGROUND**

At issue are allegedly prior inconsistent statements made by Government cooperating witnesses who testified in this trial regarding the alleged murder of Robert Perrino ("Perrino"). The Government alleges that Amato and Basile murdered Perrino in the furtherance of the Bonanno organized crime family. (Indictment ¶¶ 25-27.) On June 5, 2006, during the cross-examination by Diarmuid White, Amato's counsel, of Salvatore Vitale, a cooperating witness for the Government, Amato's counsel had the following colloquy with Vitale:

> Q:    Do you recall a meeting at a Hilton Hotel in Long Island just shortly before Perrino was killed?
>
> A:    I used to meet Richie [Cantarella] there.
>
> Q:    And did you ask him at that meeting whether Bobby Perrino was showing any signs of weakness?
>
> A:    No, I didn't have to. He volunteered that.
>
> Q:    Did he tell you in his opinion that Robert Perrino wasn't showing any signs of weakness?
>
> A:    He never said that.
>
> Q:    Did you tell Richie Cantarella that you wanted to kill Robert Perrino?
>
> A:    No. I says to Richie if he had a location in the city, and he knew what I meant by that. After he described the situation - after I discussed it with Spero.
>
> Q:    In he had a location -

> A: If he had a location in the city where we could kill Bobby [Perrino]. But you're going into like third, fourth, fifth conversation. It wasn't all done in one conversation.
>
> Q: You were not the one who suggested to him that Perrino be killed?
>
> A: No. He suggested it to me. And Al Walker was suggesting it to Anthony Spero.
>
> . . . .
>
> Q: Did you ever have that conversation with James Tartaglione where you said you were concerned that Robert Perrino would be cooperating, would cooperate because he was becoming religious, going to church, might become a priest, those type of things?
>
> A: From my firsthand knowledge or from what I was told from another individual.
>
> Q: From what you said to Mr. Tartaglione. Did you say that to Mr. Tartaglione?
>
> A: I don't remember what I said to Mr. Tartaglione.

(Transcript of the Trial Proceedings ("Tr."), at 538-39.) Later in the cross-examination, White had the following exchange with Vitale:

> Q: Did you ever tell Richard Cantarella that Anthony Urso was going to pick up Perrino?
>
> A: Not at all, sir.
>
> Q: Pick up Perrino and bring him to the murder scene?
>
> A: I don't recall saying that.
>
> Q: Do you know if you said it or not, or you just don't recall if you said it?
>
> A: I wouldn't have said that.
>
> . . . .

3

> Q: The day after the Perrino murder, did you tell James Tartaglione, Big Louie, that he should have been with you the prior night when you had to take Anthony Urso instead?
>
> A: I don't recall that. I don't believe that it's true.

(Tr. at 558-59.)

On June 7, 2006, after cooperating witness Joseph D'Amico testified that Robert Lino told him that he (Lino) murdered Perrino, and that Perrino was murdered in a bar owned by Basile, Gail Laser, Basile's counsel, cross-examined D'Amico regarding his conversation with FBI agents, whose notes ("302's") indicate that D'Amico told them that Robert Trimaldi killed Perrino, and that Basile shot Perrino. The following exchange occurred:

> Q: Do you recall that you talked to the agents on or around January 21, 2003?
>
> A: Yes.
>
> Q: Do you recall that in 2003, three-and-a-half years . . . earlier than today, you told the agents that Robert Trimaldi had told you that he had killed Perrino with an icepick. Do you remember that?
>
> A: I don't remember that, ma'am.
>
> Q: You don't remember that?
>
> A: No.
>
> Q: Let me show you something - something that may refresh your recollection . . . . do you recall, now that you have looked at this document, do you recall that in January 2003, soon after you began cooperating, that you in fact told federal agents that it was Robert Trimaldi who confessed that he killed Perrino by stabbing him with an icepick in his ear? Do you remember that?
>
> A: I don't remember telling him that.
>
> Q: You don't remember telling him that?

4

> A: They must have wrote it wrong.
>
> Q: They wrote it wrong?
>
> A: Yes.
>
> Q: Do you also remember in that same conversation telling the agents that it was Anthony Basile who shot Mr. Perrino? Do you remember telling them that?
>
> A: Never told them that.
>
> Q: You never told them that?
>
> A: No.
>
> . . . .
>
> Q: Do you also recall telling the agents that Robert Perrino was sent to an apartment to be killed? Do you recall telling them that?
>
> A: No.
>
> Q: You don't recall that?
>
> A: No.
>
> . . . .
>
> Q: Can I show you something that will refresh your recollection?
>
> A: I never told them that.
>
> Q: You never told them that?
>
> A: No.

(Tr. at 1103-5.) Counsel for Amato and Basile did not provide any other indication during their examinations that they intended to introduce prior inconsistent statements against Vitale and D'Amico, and the Government did not attempt to rehabilitate these witnesses on redirect with

5

respect to these allegedly inconsistent prior statements.

## II. DISCUSSION

The prior statement exception to the hearsay rule is set forth in Rule 613(b), which states:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Fed. R. Evid. 613(b). Thus, "A witness's prior statement may be offered to impeach that witness's credibility if (1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to []examine the witness thereon." United States v. Strother, 49 F.3d 869, 874 (2d Cir. 1995).

Rule 613(b) operates in the context of the trial court's power to regulate its courtroom pursuant to Rule 611(a), which provides that:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Fed. R. Evid. 611(a). Thus, the procedure for introducing prior inconsistent statements described in Rule 613(b) "'is not mandatory, but is optional at the trial judge's discretion.'" United States v. Schnapp, 322 F.3d 564, 571 (8th Cir. 2003) (quoting United States v. Sutton, 41 F.3d 1257, 1260 (8th Cir. 1994)). "Even if all the foundational elements of Rule 613 are met, a district court is not unequivocally bound to admit any or all extrinsic evidence of a prior inconsistent statement. Rather, a district court may still exercise its discretion to exclude such evidence."

United States v. Young, 248 F.3d 260, 268 (4th Cir. 2001).

Before proceeding to analyze the instant motion under Rules 611(a) and 613(b), I first note that Basile's argument that the Government's numerous representations that it would produce all available witnesses upon defense counsel's request precludes the Government from making the instant motion (Basile Ltr., at 1), is without merit. The question is not whether defendants are entitled *to call* witnesses, but rather *what testimony* this Court shall permit defendants to elicit. The Government's representation that it shall produce all timely requested persons in its control has no bearing on whether the testimony that Amato and Basile seek to elicit from these persons constitutes inadmissible hearsay.

**A.  Inconsistent Statement**

Regarding the Government's first argument that the statements are not inconsistent, Amato has stated that he seeks to call Cantarella to elicit testimony that Salvatore Vitale said that Robert Perrino "was 'weak' and might cooperate, thereby indicating Perrino must be killed," and that "Anthony Urso was going to pick up Perrino at the pizzeria and walk him to the murder site, and from Tartaglione that Vitale was personally concerned about Perrino's cooperation, and that Tartaglione was not available to perform the job Vitale ultimately assigned to Urso in the Perrino killing. (Amato Ltr., at 2.) Basile contends that 302's created by agents Massa and Bonavolonta indicate that D'Amico told them (a) Trimaldi (and not Lino) killed Perrino with an icepick; (b) Basile shot Perrino; and (c) Perrino was sent to an apartment to be killed. (Basile Ltr. Br., at 3-4.)

I have no trouble finding that the statements with which Amato and Basile seek to impeach Vitale and D'Amico are inconsistent. The "statements need not be diametrically

7

opposed to be inconsistent." United States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988) (quotations omitted). As these statements tend to prove that Vitale and D'Amico stated that the Perrino murder occurred in a different manner for different reasons than their trial testimony indicated, these statements are inconsistent under Rule 613(b). See id. (holding that "the determination of whether statements are in fact inconsistent [under Rule 613] is committed to the sound discretion of the district court").

**B.     Witness's Opportunity To Deny Or Explain**

Next, the Government argues that Amato and Basile failed to confront D'Amico and Vitale with the allegedly inconsistent statements, and that this line of questioning should therefore be precluded. Basile contends that his counsel's attempts to refresh D'Amico's recollection with the 302's afforded him with the opportunity to deny the prior inconsistent statement(s). (Basile Ltr. Br., at 4.) Amato's counsel urged during argument of this motion that he "set up" the use of inconsistent prior statements in his cross-examination of Vitale. (Tr. at __.)

Rule 613(b) requires that the proponent of the prior inconsistent statement provide the witness with an opportunity to explain the a prior inconsistent statement. Fed. R. Evid. 613(b); see Manley v. AmBase Corp., 337 F.3d 237, 246-48 (2d Cir. 2003); United States v. Sutton, 41 F.3d 1257, 1260 (8th Cir. 1994), cert. denied, 514 U.S. 1072, 131 L. Ed. 2d 572, 115 S. Ct. 1712 (1995) (affirming trial judge's bar on admission of prior inconsistent statement "because [the witness] was not given the opportunity to explain or deny having made a prior inconsistent statement while he was on the stand, which is normally the proper foundation for impeachment under Fed. R. Evid. 613(b)"); United States v. Betts, 16 F.3d 748, 764 (7th Cir. 1994). Where a

8

statement has not been drawn to the witness's attention during his or her testimony, a district court may properly preclude Rule 613 prior inconsistent testimony, even though the witness could have been recalled to explain or deny the statement. United States v. Schnapp, 322 F.3d 564, 570 (8th Cir. 2003); but see United States v. Hudson, 970 F.2d 948, 954-55 (First Circuit does not require party offering statement under Rule 613(b) to afford witness the opportunity to explain or deny statement before seeking to admit it, because opponent can recall witness.).

I find that Basile sufficiently confronted D'Amico with the alleged inconsistent statement. Basile's counsel confronted D'Amico with the FBI agents' notes, and repeatedly asked D'Amico about purported statements that the 302's suggest that he made. Further, D'Amico denied making these statements, and, after examining the notes, testified that the statements are incorrect reflections of his statements. As the 302's themselves are not admissible as prior inconsistent statements under Rule 613(b) because the 302's are not verbatim transcripts and D'Amico did not endorse them, see United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992), Basile in using the 302's to refresh D'Amico's recollection of the meeting made maximal use of the agents' notes on cross-examination. I therefore find that Basile provided D'Amico with ample opportunity to deny or explain the alleged prior inconsistent statement.

In contrast, I find that Amato's cross-examination of Vitale presents a much closer question of whether Vitale was provided with sufficient opportunity to explain or deny his statements. The exchanges between Amato's counsel and Vitale quoted in this Memorandum and Order are embedded within a lengthy examination of Vitale's conversations with other alleged members of the Bonanno organized crime family regarding the alleged Perrino

9

homicide.[2] It is thus unclear from the entire cross-examination whether Amato is impeaching Vitale based on extrinsic evidence of inconsistent statements, or simply probing Vitale's recollection of the events in question to elicit contradictions in Vitale's testimony. Furthermore, Amato's counsel never confronted Vitale with the purported evidence of the inconsistent statement(s). Given the lengthy examination of Vitale's memory of conversations that he may have had with other alleged members of the Bonanno organized crime family regarding the alleged Perrino homicide, and lacking any questions that put Vitale on notice of the existence of extrinsic evidence of a prior inconsistent statement, this court is constrained to conclude that Amato did not provide Vitale with sufficient opportunity to explain or deny the prior inconsistent statement.

C.   **Government's Opportunity To Examine The Witness**

The Government further argues that this court should preclude these witnesses because defense counsel failed to "inform the court and opposing counsel, at the time the witness testifie[d], of the intention to introduce" impeaching extrinsic evidence. (Gov't Ltr., at 3 (quoting Weinstein's Federal Evidence § 613.05(5) at 613-28 (alterations omitted and supplied)).)

The Second Circuit is silent on the proper procedures for the proponent to place the court and the opposing party on notice of the impeachment of a witness through the use of a prior

---

[2] Amato's counsel during this cross-examination also asked Vitale about conversations that he had with Spero (Tr. at 538-40, 543, 545, 550), Al Walker (id. at 538), George Sciascia (id. at 540), Frank Lino (id. at 543-46, 551-53, 556), Michael Cardello (id. at 547-50, 552, 555), Robert Lino, Jr. (id. at 551, 553, 557), and Duane Leisenheimer (id. at 557) regarding the alleged Perrino homicide.

inconsistent statement.³ Other circuits have held that Rule 613 does not mandate specific procedures in order for a trial court to admit prior inconsistent statements. See, e.g., Schnapp, 322 F.3d at 571 (Rule 613(b) "on its face, does not require that the witness be cross-examined about the alleged prior inconsistent statement *before* that statement may be presented as impeachment evidence," and advisory committee notes explain that no specific time or sequence is required.). Nevertheless, it is equally clear that a trial court has the discretion to bar a statement for failure to comport with the procedures set forth in Rule 613. See id.; Sutton, 41 F.3d at 1260; cf. Harris v. Barkley, 202 F.3d 169, 174 (2d Cir. 2000) (finding that district courts have the discretion to limit witnesses that would result in a trial delay in the court's interest in regulating its courtroom).

Judge Weinstein has set forth the prevailing practice in admitting Rule 613 prior inconsistent statements in his widely respected evidence treatise. When an impeaching party does not confront a witness with the specifics of a prior inconsistent statement, the party should "inform[] the court and opposing counsel, at the time the witness testifies, of the intention to introduce" the extrinsic evidence to alert the court and opposing party to the potential need to "keep the witness available to be called to explain the statement." Weinstein's Federal Evidence § 613.05(5), at 613-28. This practical rule is intended to provide the court with reasonably assurance of orderly conduct at trial, and I shall adhere to it.

As I have found that defendant Basile provided D'Amico with an opportunity to explain

---

³ The parties have brought to this court's attention the unpublished Second Circuit case of United States v. Surdow, No. 04-2459-Cr., 2005 U.S. App. LEXIS 2156 (2d Cir. Feb. 9, 2005). While this decision provides an otherwise useful Rule 613(b) analysis, as this is an unpublished decision, it has no precedential value and is not specifically relied upon in this decision.

or deny his prior inconsistent statement suggested in the impeaching extrinsic evidence, Basile's counsel was not required to further alert the court and the Government as to Basile's intention to call the FBI agents who authored the 302's. However, as I find that Amato did not afford Vitale with sufficient opportunity to explain or deny the alleged prior inconsistent statements, I must now determine whether Amato sufficiently notified this court or the Government of his intention to call Cantarella, Coppa, and Tartaglione in order to elicit Vitale's alleged prior inconsistent statements under Rule 613(b).

The record reflects that Amato, at the time of his cross-examination of Vitale, did not put this court or the Government on notice of his intention to call Cantarella, Coppa, or Tartaglione in his direct case in order to admit Vitale's hearsay statements as prior inconsistent statements. As stated supra, Amato in his cross-examination of Vitale referred to numerous conversations with many different alleged members of the Bonanno organized crime family regarding the alleged Perrino homicide. While I am sympathetic to the explanation of Amato's counsel that he thought that the Government would call Cantarella, Coppa, and Tartaglione in its case-in-chief, Amato should have made his intentions known during his examination of Vitale that he would be seeking to introduce these prior inconsistent statements through Cantarella, Coppa, and/or Tartaglione. Having failed to do so, I find that he did not provide this court or the Government with sufficient notice under Rule 613(b).

**D.     Other Considerations Under Rule 611(a)**

Given that this court has broad latitude in deciding whether prior inconsistent statements should be admitted under Rule 613, I take this opportunity to summarize the relative merits of the statements sought by Amato and Basile under Rule 611(a). The statements sought by Basile

are considerably more material and reliable than those offered by Amato. The statements D'Amico allegedly made to the FBI officials are highly probative of D'Amico's recollection of the Perrino homicide and Basile's alleged role in the scheme, and the 302's are reliable documents with which to examine the FBI officials. In contrast, the statements with which Amato seeks to impeach Vitale primarily implicate the collateral matters of Vitale's role, motive and interest in ordering Perrino's death, and lack any contemporaneous recorded recollection. Lastly, calling Cantarella, Coppa, and Tartaglione would present a much greater logistical burden on the Government than the FBI agents. Even if the FBI agents' testimony caused the Government to call D'Amico in its rebuttal case, this is a relatively minor inconvenience and is not likely to delay the trial.

### III. CONCLUSION

Accordingly, I find that the prior inconsistent statements sought by Basile are admissible pursuant to Rules 611(a) and 613(b), because they are inconsistent, D'Amico was afforded the opportunity to deny or explain them, and Basile's counsel provided the Government and this court with sufficient notice that she intended to seek to admit the statements. Moreover, I find the extrinsic evidence of prior inconsistent statements to be material and reliable, and the potential prejudice to the Government in recalling D'Amico to be relatively minor. However, the prior inconsistent statements that Amato seeks to introduce are not admissible under Rules 611(a) and 613(b), despite the fact that they are inconsistent, because Vitale was not provided sufficient opportunity to deny or explain them, the Government and this court were not afforded sufficient notice of Amato's intent to admit these prior inconsistent statements, and allowing Amato to call these witnesses would substantially burden the Government and sacrifice the

13

orderly conduct of this trial. I therefore partially grant and partially deny the Government's motion, with the caveat that this ruling is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." <u>Luce v. United States</u>, 469 U.S. 38, 41 (1984).

The Government's motion to preclude the introduction of prior inconsistent statements by Amato is GRANTED, and the Government's motion to preclude the introduction of prior inconsistent statements by Basile is DENIED.

SO ORDERED.

Dated: June 27, 2006 \_\_\_\_\_/s/_____
      Brooklyn, N.Y. Nicholas G. Garaufis
                                          United States District Judge